## Exhibit A

## Proposed Order

Richard J. Cooper, Esq.
Luke A. Barefoot, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for the Foreign Representative*
*of Odebrecht Engenharia e Construção S.A.*
*and affiliated debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Odebrecht Engenharia e Construção S.A., *et al.*,[1] | Case No. 20-12741 |
| | (Joint Administration Pending) |
| Debtors in a Foreign Proceeding | |

**ORDER GRANTING RECOGNITION**
**AND FINAL RELIEF IN AID OF A FOREIGN PROCEEDING**

Upon the motion (the "Motion")[2] of Adriana Henry Meirelles as foreign representative

(the "Petitioner"), in the above-captioned chapter 15 cases (the "Chapter 15 Cases") in respect

of the Debtors in a foreign proceeding in an extrajudicial reorganization in the Federative

Republic of Brazil pursuant to Federal Law No. 11,101 of February 9, 2005 (the "Brazilian

Bankruptcy Law"), approved by the First Court of Bankruptcy and Judicial Recovery of the

State of São Paulo on October 26, 2020 (the "Brazilian Court," and such proceeding, the

---

[1]    The Debtors in these chapter 15 cases (the "Chapter 15 Cases") and the last four identifying digits of the tax number in the jurisdiction are: Odebrecht Engenharia e Construção S.A. (Brazil – 01-28); CNO S.A. (Brazil – 01-82); OECI S.A. (Brazil – 01-78).

[2]    Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

"Brazilian EJ Proceeding"), for entry of a final order (this "Order"), pursuant to sections 105(a), 1507, 1509(b), 1515, 1517, 1520(a) and 1521 of title 11 of the United States Code, 11 U.S.C. sections 101, et seq. (the "Bankruptcy Code") (i) granting the  Petitions for Recognition in the Chapter 15 Cases and recognizing the Brazilian EJ Proceeding as a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding) pursuant to section 1517 of the Bankruptcy Code; (ii) recognizing that the Petitioner is the duly appointed foreign representative of the Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Debtors in the Chapter 15 Cases; (iii) recognizing and enforcing the Brazilian Reorganization Plans in the United States and giving full force and effect to and granting comity in the United States to the Brazilian Confirmation Order; (iv) permanently enjoining all entities (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Petitioner and her expressly authorized representatives and agents from (a) commencing execution against any of the Debtors' assets, (b) the direct or indirect commencement or continuation, including the issuance or employment of process or discovery, of a judicial, administrative, arbitral or other action or proceeding, or to recover a claim, which in  either case in any way relates to, or would interfere with, the administration of the Debtors' estates in the Brazilian EJ Proceeding or implementation of the procedures with respect to the issuance of the New Securities (the "Distribution Procedures"), including, without limitation, any and all unpaid judgments, settlements, notes or otherwise against the Debtors in the United States, (c) taking or continuing any act to create, perfect or enforce a lien or other security interest, set off or other claim against the Debtors or any of their property, (d) transferring, relinquishing, disposing of any property of the Debtors to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Petitioner and her

authorized representatives and agents or in any way attempting to obtain possession or control over any property of the Debtors or (e) except for the Excluded Litigations (as defined below) to the extent set forth herein, commencing or continuing an individual action or proceeding concerning the Debtors' property, assets, rights, obligations or liabilities to the extent they have not been stayed pursuant to sections 1520(a), 362 and 1521 of the Bankruptcy Code, *provided*, in each case, that such injunction shall be effective solely within the territorial jurisdiction of the United States; (v) granting the Debtors and each of their respective successors, agents, representatives, advisors and counsel the protections contained in sections 306 and 1510 of the Bankruptcy Code; (vi) permanently enjoining all entities (as that term is defined in section 101(15) of the Bankruptcy Code) from taking any action against the Debtors or any other person or entity within the territorial jurisdiction of the United States that is in contravention of or that is inconsistent with the Brazilian Reorganization Plan; (vii) with respect to claims based upon, concerning or relating in any way to the solicitation and/or implementation of the Brazilian Reorganization Plan, permanently enjoining and restraining any person or entity (as such terms are defined in sections 101(15) and (41) of the Bankruptcy Code) from taking any action or asserting any claim (as such term is defined in section 101(5) of the Bankruptcy Code) relating to the Existing Notes within the territorial jurisdiction of the United States (including, without limitation, commencing or continuing any action or legal proceeding relating to the Existing Notes (including, without limitation, bringing suit in any court, arbitration, mediation or any judicial or quasi-judicial, administrative or regulatory action, proceeding or process whatsoever relating to the Existing Notes), whether directly or by way of counterclaim (and from seeking discovery of any nature related thereto)) that would interfere with or impede the administration, implementation and/or consummation of the Brazilian

Reorganization Plan and/or the terms of this Order against the Debtors, the Petitioner, the U.S. Intermediaries, and any of their successors or assigns; (viii) barring in the United States, as of the Effective Date, the assertion of any claim against any person or entity released pursuant to the Brazilian Reorganization Plan or the Brazilian EJ Proceeding (which includes the Debtors, the U.S. Intermediaries and other released parties) with respect to any debt cancelled, discharged or restructured under the Brazilian Reorganization Plan, Brazilian EJ Proceeding or as a result of Brazilian Bankruptcy Law relating to the Brazilian EJ Proceeding in a manner inconsistent with the Brazilian Reorganization Plans, the Brazilian EJ Proceeding or Brazilian Bankruptcy Law; (ix) authorizing and directing the U.S. Intermediaries to carry out any and all ministerial actions that are required of them to effectuate the Brazilian Reorganization Plan, in accordance with the procedures attached to this Order, or that are otherwise necessary and appropriate to consummate the Brazilian Reorganization Plan, including the issuance and distribution of the New Securities; (x) automatically relieving the Trustee of any further obligations under or related to the guarantees provided by the Debtors under the Existing Notes (the "Guarantee Obligations") under the indentures of the Existing Notes and related documentation, upon the completion of the transactions necessary to consummate the distributions to the holders of Existing Notes pursuant to the terms of the Brazilian Reorganization Plan and the Distribution Procedures and the cancellation of the Guarantee Obligations under the Existing Notes and related documents; and (xi) granting such other and further relief as this Court deems just and proper; *provided* that the relief described in the foregoing clauses (i) through (xi) shall be subject in all respects to the terms and limitations set forth in this Order, including, without limitation, paragraphs 26 and 27 hereof; and upon consideration of the Foreign Representative Declaration and the Brazilian Counsel Declaration,

filed in support of the Debtors' Petitions for Recognition; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.) as amended by Standing Order M-431, dated February 1, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b)(2)(P); and due and proper notice of the Motion and Hearing having been provided in accordance with the Order Pursuant to Federal Rules of Bankruptcy Procedures 2002 and 9007 Scheduling Hearing and Specifying Form and Manner of Service and Notice, ECF No. [____] (the "Scheduling Order"); and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

THIS COURT HEREBY FINDS AND DETERMINES THAT:

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

B.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for

the Southern District of New York dated as of January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

C.      The Petitioner is the duly appointed "foreign representative" of each of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

D.      The Chapter 15 Cases were properly commenced pursuant to sections 1504, 1509 and 1515 of the Bankruptcy Code.

E.      The Petitioner has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 2002(q).

F.      The Brazilian EJ Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

G.      The Brazilian EJ Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

H.      Brazil is the center of main interests of the Debtors, and, accordingly, the Brazilian EJ Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

I.      The Petitioner and the Debtors, as applicable, are entitled to all of the automatic relief available pursuant to section 1520 of the Bankruptcy Code, without limitation.

J.      The Petitioner and the Debtors, as applicable, are further entitled to the additional assistance and discretionary relief requested in the Motion pursuant to sections 1507 and 1521(a) of the Bankruptcy Code.

K.    Absent permanent injunctive relief tailored in accordance with the terms of this Order, the Brazilian EJ Proceeding and the consummation and implementation of the Brazilian Reorganization Plan may be thwarted by the actions of particular creditors, a result inimical to the purposes of Chapter 15 of the Bankruptcy Code as set forth in section 1501(a) of the Bankruptcy Code.  Such actions could put in peril the Debtors' ability to successfully restructure.

L.    Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is essential to the success of the Brazilian EJ Proceeding and Brazilian Reorganization Plan, (iii) is an integral element of the Brazilian EJ Proceeding and Brazilian Reorganization Plan and to their effectuation, (iv) confers material benefits on, and is in the best interests of the Debtors, and their creditors, including, without limitation, the beneficial owners of the Existing Notes and the New Securities and their nominees on their behalf (collectively, the "Beneficial Owners") and the Trustee, and (v) is important to the overall objectives of the Debtors' restructuring.

M.    The cancellation of the Guarantee Obligations under the Existing Notes and the issuance of the New Securities as contemplated by the Brazilian Reorganization Plan and the Distribution Procedures (subject to the terms and conditions hereof) are essential elements of the Brazilian Reorganization Plan and are in the best interest of the Debtors and their creditors, including the Beneficial Owners.  The Distribution Procedures are a fair and reasonable means of effectuating the terms of the Brazilian Reorganization Plan.

N.    Each of (i) The Bank of New York Mellon ("BNYM"), (A) in its capacity as the indenture trustee (the "Trustee") under the indentures relating to the Existing Notes and (B) in its capacity as the indenture trustee under the indenture relating to the issuance of the New Notes, and (ii) the exchange agents, administrative agents and settlement agents used in the Distribution Procedures (each of the parties in the foregoing clauses (i) through (ii), the "Directed Parties"), (iii)

The Depository Trust Company ("DTC") in its capacity as record holder of the Existing Notes, as authorized and empowered to act pursuant to the terms and conditions of the Distribution Procedures, (iv) the DTC participants, (v) each holder and beneficial owner of the Existing Notes (and the nominees and representatives thereof), in each case solely in such capacity, (vi) the Debtors, (vii) the Creditor Representative (as defined in the Brazilian Reorganization Plan), the Ad Hoc Group and their respective attorneys, financial advisors and other representatives and (viii) any other party authorized by the Debtors to implement the Distribution Procedures (each of the parties in foregoing clauses (iii) through (ix), the "Authorized Parties") are hereby authorized and empowered to take all steps outlined in the Distribution Procedures.

O.      The relief granted herein will not cause undue hardship or inconvenience to any party in interest and to the extent that any hardship or inconvenience may result to such parties, it is outweighed by the benefits of the requested relief to the Debtors, their estates and their creditors.

P.      The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to sections 105, 362, 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Petitions for Recognition and other relief requested in the Motion are hereby granted as set forth herein.

2.      The Brazilian EJ Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

3.      The Petitioner is the duly appointed foreign representative of the Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf

of the Debtors in the Chapter 15 Cases.

4.        All relief afforded to a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code is hereby granted to the Brazilian EJ Proceeding.

5.        Subject to sections 1520 and 1521 of the Bankruptcy Code and paragraphs 26 and 27 of this Order, the Brazilian EJ Proceeding and all orders of the Brazilian Court shall be granted comity in the United States; *provided that* the applicability of section 362 shall be applied to stay actions that are contrary to the Brazilian Reorganization Plan or seek to collect or enforce on the Existing Notes but shall not be applied, in accordance with paragraph 18, to that certain litigation pending in the United States District Court for the Southern District of New York involving Debtors OEC and CNO captioned <u>DoubleLine Capital LLP et al. v. Odebrecht Finance Ltd. et al.</u>, Case No. 17- 04576 and that certain litigation pending in the United States District Court for the Southern District of New York involving Debtors Odebrecht S.A. and Odebrecht Finance Ltd. and the Washington State Investment Board, captioned <u>Washington State Investment Board v. Odebrecht S.A., et al.</u>, Case No. 17-cv08118 (the "<u>Excluded Litigations</u>").

6.        All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Hearing, or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

7.        Subject to the terms of this order (including, without limitation, paragraphs 26 and 27 hereof), the Brazilian Confirmation Order and the Brazilian Reorganization Plan, including any amendments or modifications thereto are hereby recognized, granted comity, and given full force and effect to the same extent that they are given effect in the Federative Republic

of Brazil, and each is binding on all creditors of the Debtors, including Beneficial Owners, and any of their successors or assigns, and that the Distribution Procedures, summarized in Appendix A hereto, are approved in their entirety as the means for effectuating the Brazilian Reorganization Plan.

8.        Subject to paragraphs 26 and 27 hereof, all persons and entities are permanently enjoined and restrained from (i) commencing or taking any action that is in contravention with or would interfere with or impede the administration, implementation and/or consummation of the Brazilian Reorganization Plan, the Brazilian Confirmation Order or the terms of this Order, including the Distribution Procedures and (ii) taking any action, including, without limitation, commencing or continuing any action or legal proceeding (including, without limitation, bringing suit in any court, arbitration, mediation, or any judicial or quasi-judicial, administrative or regulatory action, proceeding or process whatsoever), and including action by way of counterclaim, and from seeking discovery of any nature related to the foregoing, to recover or offset any debt or claims that are extinguished, novated, cancelled, discharged or released under the Brazilian Reorganization Plan, the Brazilian Confirmation Order, or as a result of the Brazilian law, against the Debtors or their property located in the territorial jurisdiction of the United States, the Directed Parties, the Authorized Parties or the Petitioner; *provided, however*, that this injunction will not prevent any entity from (i) taking any action in the Brazilian EJ Proceeding consistent with Brazilian law, including appeals in Brazil related thereto, or (ii) pursuing any rights or remedies granted to that entity pursuant to the Brazilian Reorganization Plan; *provided further however,* that no action may be taken within the territorial jurisdiction of the United States to confirm or enforce any award or judgement that would otherwise be in violation of this Order without first obtaining leave of this Court.

9.          taking any action or asserting any claim within the territorial jurisdiction of the United States that is in contravention of or that is inconsistent with the Brazilian Reorganization Plan or the terms of this Order, including the Distribution Procedures.

10.         Except as set forth in paragraphs 26 and 27 hereof, and as otherwise provided by or that may be necessary to enforce the terms of the Brazilian Reorganization Plan, the Brazilian Confirmation Order, this Order or the Distribution Procedures, all persons and entities (as such terms are defined in sections 101(15) and (41) of the Bankruptcy Code, respectively), other than the Petitioner and her expressly authorized representatives and agents, are hereby permanently enjoined and restrained from:

a.          execution against any of the Debtors' assets;

b.          except for the Excluded Litigations in accordance with paragraph 18, the direct or indirect commencement or continuation, including the issuance or employment of process or discovery, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim (as such term is defined in section 101(5) of the Bankruptcy Code), which in either case in any way relates to, or would interfere with, the administration of the Debtors' estates in the Brazilian EJ Proceeding or the solicitation, implementation or consummation of the transactions contemplated by the Brazilian Reorganization Plan, including, without limitation, distribution of the New Securities as provided hereunder and any and all unpaid judgments, settlements, notes, or otherwise against the Debtors or the Trustee in the United States;

c.          taking or continuing any act to create, perfect, or enforce a lien or other security interest, set off, or other claim against the Debtors or any of their property as it

11

relates to the Existing Notes;

d.      transferring, relinquishing, disposing of any property of the Debtors to any person or entity other than the Petitioner and her authorized representatives and agents or in any way attempting to obtain possession or control over any property of the Debtors;

e.      except for the Excluded Litigations in accordance with paragraph 18, asserting any claim, commencing or continuing any action or proceeding related to the Existing Notes (including, without limitation, bringing suit in any court, arbitration, mediation, or any judicial or quasi-judicial, administrative or regulatory action, proceeding or process whatsoever related to the Existing Notes), whether directly or by way of counterclaim (and from seeking discovery of any nature related thereto)) concerning or otherwise relating to (i) the Debtors' property, assets, affairs, rights, obligations, or liabilities in regards to the Existing Notes to the extent they have not been stayed pursuant to section 1520(a) and 362 of the Bankruptcy Code, or (ii) any claim released under the Brazilian Reorganization Plan against any of the Released Parties[3]; and

---

[3]      Under the Brazilian Reorganization Plan "Released Parties" means (a) the Noteholders (as defined in the Brazilian Reorganization Plan), (b) the Debtors and their Affiliates (as defined in the Brazilian Reorganization Plan), (c) New OEC (as defined in the Brazilian Reorganization Plan), (d) New Notes Issuer (as defined in the Brazilian Reorganization Plan), (e) New Holdco (as defined in the Brazilian Reorganization Plan), (f) the Creditor Representative (as defined in the Brazilian Reorganization Plan), (g) the trustees and any agents appointed under the (i) Existing Notes' indentures, (ii) New Notes Indentures (as defined in the Brazilian Reorganization Plan) or (iii) Holdco Instrument Agreement (as defined in the Brazilian Reorganization Plan), and (h) the Proxy Agent (as defined in the Brazilian Reorganization Plan); with respect to each of the foregoing parties in clauses (a) through (h), each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), assigns, Subsidiaries (as defined in the Brazilian Reorganization Plan), direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies; and with respect to each of the foregoing parties in clauses (a) through (h), each of such party's current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, trustees, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors or sub-advisors, and other professionals.

f.      taking any action that would be in contravention of or inconsistent with the Distribution Procedures,

*provided*, in each case that such injunction shall be effective solely within the territorial jurisdiction of the United States.

11.      The Debtors and each of their respective successors, agents, representatives, advisors and counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

12.      The Directed Parties are authorized and directed, and the Authorized Parties are authorized and empowered, to take any and all lawful actions necessary to give effect to and implement the Brazilian Reorganization Plan, subject to the terms and conditions thereof and of the documents under which they have or will be appointed to act.

13.      With respect to the Trustee, subject to its receipt of payment in full of any outstanding Trustee Fees and Expenses (as such term is defined below), such Trustee is authorized and directed to comply with the Distribution Procedures in order to deliver the New Securities.

14.      The Directed Parties and Authorized Parties are exculpated and released from any liability for any action or inaction taken in furtherance of and/or in accordance with this Order, the Brazilian Reorganization Plan, and the Distribution Procedures, except for any liability arising from any action or inaction constituting gross negligence, fraud or willful misconduct as determined by this Court.

15.      Each of the Debtors and the Trustee, subject to the Trustee's receipt of payment in full of any outstanding Trustee Fees and Expenses and the prior or substantially contemporaneous issuance and distribution of the New Securities, is authorized and directed to

provide DTC with the customary documentation accepted by it, as applicable, in order to cancel the Guarantee Obligations, as contemplated by (and subject to the terms and conditions of) the Brazilian Reorganization Plan and the Distribution Procedures; *provided* that the Trustee is not obligated to grant indemnity in connection therewith.    The Guarantee Obligations shall be deemed cancelled on the dates and at the times set forth in the Distribution Procedures, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged and deemed satisfied in full (*provided*, that all of the rights, remedies, protections, indemnities, privileges and protections in favor of Trustee against the Debtors under the Existing Notes and the related documentation shall survive such cancellation), and the Trustee, subject to its receipt of payment in full of any outstanding Trustee Fees and Expenses, is authorized and directed to take any and all actions requested of it to give effect to such cancellation of the Guarantee Obligations.    For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Distribution Procedures (including any modifications thereof) shall (i) be consistent with the terms of the Brazilian Reorganization Plan and (ii) provide that the cancellation of any Guarantee Obligations shall not occur unless (without limitation) the New Securities have been issued and distributed in accordance with the terms of the Brazilian Reorganization Plan or are being distributed contemporaneously with such cancellation.

16.    Upon distribution of the portion of the New Securities allocated to the relevant Existing Notes to DTC for onward distribution to the relevant Beneficial Owners pursuant to the Distribution Procedures, the Trustee shall be automatically relieved of any further obligations relating to the Guarantee Obligations under the relevant indenture and related agreements and all of the Trustee's duties under or related to the Guarantee Obligations under the indenture and related instruments, certificates, notes and other documents shall be

deemed discharged and satisfied.

17.     Nothing in this Order shall affect the rights of the Trustee to assert, to collect or to be paid their fees and expenses, including, without limitation, any amount related to the Debtors' indemnity obligations in favor of the Trustee, from the Debtors or from the distributions to Beneficial Owners, in each case, in accordance with the terms of the relevant indenture governing the relevant Existing Notes and/or the New Securities or as otherwise agreed to in writing by the relevant Trustee (the "Trustee Fees and Expenses").

18.     With respect to claims based upon, concerning or relating in any way to any of the Existing Notes or the solicitation or implementation of the Brazilian Reorganization Plan, and subject in all respects to paragraphs 26 and 27 hereof, all persons and entities are enjoined and restrained from taking any action or asserting any claim within the territorial jurisdiction of the United States (including without limitation, commencing or continuing any action or legal proceeding (including without limitation, bringing suit in any court, arbitration, mediation, or any judicial or quasi-judicial, administrative or regulatory action, proceeding or process whatsoever), whether directly or by way of counterclaim (and from seeking discovery of any nature related thereto)) that would interfere with or impede the administration, implementation or consummation of the Brazilian Reorganization Plan or the terms of this Order against the Debtors, the Petitioner, the Trustee, the U.S. Intermediaries, and any of their successors or assigns.

19.     Notwithstanding anything to the contrary contained herein, this Order shall not be construed as enjoining (i) the Excluded Litigations, *provided that* this Court's Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief, In re Odebrecht S.A., Case No. 19-12731 (S.D.N.Y. Bankr.), ECF No. 22, shall continue to be applicable such

that in each case the stay shall be lifted for the sole purpose of liquidating and reducing their claims to, in the case of the Excluded Litigations, a final judgment including applicable appeals (for the avoidance of doubt, the stay shall continue to apply to any attempt to add parties to the Excluded Litigations); (ii) the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bankruptcy Code or the exercise of any rights to the extent not stayed pursuant to section 362(o) of the Bankruptcy Code; (iii) any action permitted or contemplated by (a) the Brazilian Reorganization Plan or Brazilian Confirmation Order or (b) any agreement entered into in connection with the Brazilian Reorganization Plan or Brazilian EJ Proceeding, (iv) solely to the extent that the Brazilian Reorganization Plan are no longer effective under Brazilian law for any reason, any action that is not prohibited by the Brazilian Court with jurisdiction over the Brazilian Reorganization Plan or Brazilian Law; or (v) the rights of the Trustee (a) to assert, to collect and be paid their respective Trustee Fees and Expenses by or from the Debtors, or (b) to assert any of the rights, remedies, protections, indemnities, privileges and protections in favor of Trustee under the Existing Notes and the related documentation.

20.    As of the Effective Date, any action that asserts claims against any person or entity released pursuant to the Brazilian Reorganization Plan or the Brazilian EJ Proceeding (which includes the Debtors and other released parties) with respect to any obligations cancelled, discharged or restructured under the Brazilian Reorganization Plan, Brazilian EJ Proceeding or as a result of Brazilian Bankruptcy Law relating to the Foreign Proceeding in a manner inconsistent with the Brazilian Reorganization Plans, the Brazilian EJ Proceeding or Brazilian Bankruptcy Law is barred in the United States.

21.    Notwithstanding any provision in the Bankruptcy Rules to the contrary,

(i) this Order shall be effective immediately and enforceable upon entry; (ii) the Petitioner is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Petitioner is authorized and empowered, and may in her discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

22.     A copy of this Order, confirmed to be true and correct, shall be served, within seven business days of entry of this Order, in accordance with this Court's Scheduling Order, with such service being good and sufficient service and adequate notice for all purposes.

23.     This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

24.     Except as set forth in paragraphs 26 and 27 of this Order, and notwithstanding anything to the contrary in any other provision hereof, the effectiveness of all injunctive relief in support of the Brazilian Reorganization Plan and the Brazilian Confirmation Order contained in this Order, including, but not limited to paragraphs 8, 9, 17 and 19, shall be limited to and in support of the Brazilian Reorganization Plan and the Brazilian Confirmation Order as they are given effect by a court of competent jurisdiction in the Federative Republic of Brazil from time to time, and if any Brazilian Reorganization Plan or the Brazilian Confirmation Order is modified by a court of competent jurisdiction then such provisions of this Order shall continue to apply to the Brazilian Reorganization Plan and the Brazilian Confirmation Order as so modified, but shall not apply to any provision of any Brazilian Reorganization Plan or the Brazilian Confirmation Order that has ceased to be given effect in the Federative Republic of Brazil.  For the avoidance of doubt, and notwithstanding the foregoing sentence (but subject in all respects to paragraphs 26 and 27 of this Order), while any such modification is effective,

this Order shall remain effective in all other respects, including with respect to recognition of the Petitioner as the "foreign representative" and with respect to recognition of the Brazilian EJ Proceeding, and if any previously suspended or rescinded provision of a Brazilian Reorganization Plan or the Brazilian Confirmation Order is reinstated in Brazil, the related provisions of this Order shall be automatically reinstated to the same extent.

25.     In no event shall this Order prevent the implementation of any amendments or modification to the Brazilian Reorganization Plan that may be agreed upon by and among the Debtors and the applicable creditors pursuant to applicable law and approved by the Brazilian Court.

26.     Notwithstanding anything to the contrary herein, nothing in this Order shall in any way limit, impair, or affect the rights of holders, beneficial owners, nominees of beneficial owners or agents under or relating to the New Securities, once issued.  To the extent that any now existing or future (x) provision of the Brazilian Reorganization Plan or any schedule, exhibit or appendix thereto or (y) order of the Brazilian Court or any higher Court in Brazil having jurisdiction over the EJ Proceeding or the relief granted therein (including, without limitation, any purported modification or amendment of the terms of the Brazilian Reorganization Plan or any order approving such modification or amendment) purports to modify the terms of the New Securities (or the rights of holders, beneficial owners, nominees of beneficial owners or agents thereunder) from the terms of the form indentures appended to the Brazilian Reorganization Plan (a "Non-Recognized Provision"), nothing in this Order shall be deemed to recognize, enforce or grant any force or effect to such Non-Recognized Provision in the United States.  The New Securities, and any amendments or modifications thereof, shall be subject to the terms, conditions and law governing the applicable New Securities.

27.    Notwithstanding anything to the contrary herein, (a) the injunctions and other terms of this Order shall not be construed to in any way limit or prohibit (whether by commencing legal action in the United States or otherwise) the Creditor Representative, the Ad Hoc Group, any holder, the Trustee, agent, trustee or beneficial owner of the Existing Notes or New Securities, or any nominee, successor or representative of any of the foregoing, from enforcing their respective rights under, or the terms and conditions of, the Brazilian Reorganization Plan, the New Securities, the Distribution Procedures any other agreements, instruments or other documents entered into, issued or executed in connection with the Brazilian Reorganization Plan or the EJ Proceeding or any order of the Brazilian Court or any higher court having jurisdiction over the EJ Proceeding or the relief granted therein and (b) all such rights described in the foregoing clause (a) of this paragraph 27 are expressly preserved.  For the avoidance of doubt, nothing in this paragraph 27 or paragraph 26 should be construed as allowing the Creditor Representative, the Ad Hoc Group, any holder, agent, trustee or beneficial owner of the Existing Notes, or any nominee, successor or representative of any of the foregoing, to enforce their rights (*provided*, that all of the rights, remedies, protections, indemnities, privileges and protections in favor of the Trustee against the Debtors under the Existing Notes and the related documentation shall survive such cancellation) under the Existing Notes following the cancelation of the Existing Notes and related guarantees pursuant to the Brazilian Restructuring Plan (as approved by the Brazilian Court and enforced in accordance with this Order) and the OFL RJ Plan (as approved by the court in Brazil overseeing OFL's judicial reorganization proceeding and enforced pursuant to the order enforcing the OFL RJ Plan (the "OFL Order")).

Dated: _____
New York, New York

_____

UNITED STATES BANKRUPTCY JUDGE

## Appendix A[1]

### Distribution Procedures[2]

Odebrecht Engenharia e Construção S.A. ("OEC"), CNO S.A. ("CNO") and OECI S.A. ("OECI") are guarantors (the "Guarantors") of the notes issued by Odebrecht Finance Ltd ("OFL" and such notes, the "Existing Notes").  Each of the Guarantors and OFL are involved in separate restructuring proceedings in Brazil and are debtors in chapter 15 cases pending in the United States Bankruptcy Court for the Southern District of New York.

All of the Existing Notes are held through The Depository Trust Company ("DTC"), the U.S. securities depository.

As summarized below, pursuant to the Guarantors' Brazilian Reorganization Plan, the order approving the Guarantors' chapter 15 petition for recognition of the Brazilian EJ proceeding and motion for final relief (the "OEC Order") and the OFL Order, distributions by the Guarantors (the "Distribution") to the holders of the Existing Notes are expected to be made in the following way:

<u>Mandatory Exchange of the Existing Notes for New Securities</u>

The Distribution will be coordinated between the indenture trustee of the Existing Notes, OFL and the Guarantors.

The  process will involve a "mandatory exchange" of the Existing Notes for a new series of senior unsecured notes (the "<u>New Notes</u>") and dollar denominated units of a participating debt instrument entitling holders thereof to a specified percentage of future distributions to be made by OEC S.A. (the "<u>Instrument</u>") being issued under the Brazilian Reorganization Plan (jointly, the "<u>New Securities</u>"), whereby the Existing Notes will be exchanged for the New Securities.

Holders of Existing Notes will receive their pro rata portion of the New Securities based on the distribution ratios calculated by the Guarantors in accordance with the Brazilian Reorganization Plan and as described in the Consent Solicitation Statement for approval of the Brazilian Reorganization Plan, and the Existing Notes will be exchanged through DTC for a pro rata share of the New Securities and removed from the DTC system as part of that process.

The Distribution will occur following the effectiveness of the Brazilian Reorganization Plan and issuance of the OEC Order and OFL Order.  Those noteholders with the positions just prior to

---

[1]     These Distribution Procedures are indicative and subject to revision based on the relevant requirements and procedures of DTC (as such term is defined herein), provided that any revisions that impair the rights, including the right to receive the New Notes and the Instrument, of the holders of Existing Notes under the Brazilian Reorganization Plan shall not be permitted except by further order of the Bankruptcy Court following notice to parties in interest consistent with the Bankruptcy Court's rules and procedures.

[2]     Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Order.

the occurrence of the Distribution will have their Existing Notes removed and receive the pro rata share of New Securities.