Richard J. Cooper, Esq.
Luke A. Barefoot, Esq.
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for the Foreign Representative
of Odebrecht Engenharia e Construção S.A.
and affiliated debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Odebrecht Engenharia e Construção S.A., *et al.*,[1]<br><br>Debtor in a Foreign Proceeding | Chapter 15<br><br>Case No. 20-12741<br><br>(Joint Administration Pending) |

**DECLARATION OF FELIPE RIBEIRO DA LUZ
CAMARA IN SUPPORT OF VERIFIED PETITION FOR AN ORDER
GRANTING RECOGNITION AND FINAL RELIEF IN AID OF A FOREIGN
PROCEEDING PURSUANT TO 11 U.S.C. §§ 105(A), 1515, 1517, 1520(A) AND 1521**

I, Felipe Ribeiro da Luz Camara, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am an attorney licensed, and in good standing, to practice in Brazil. I am a partner of the law firm E.Munhoz Advogados, a law firm focused on litigation, arbitration, restructuring, and corporate law, with office in Brazil in the city of São Paulo. E.Munhoz Advogados has been retained by Odebrecht Engenharia e Construção S.A. and its affiliated debtors (the "Debtors") in the above-captioned chapter 15 cases (the "Chapter 15 Cases"), to represent the Debtors as their

---

[1] The Debtors in these chapter 15 cases (the "Chapter 15 Cases") and the last four identifying digits of the tax number in the jurisdiction are: Odebrecht Engenharia e Construção S.A. (Brazil – 01-28); CNO S.A. (Brazil – 01-82); OECI S.A. (Brazil – 01-78).

primary counsel in their court-supervised proceeding known as *recuperação extrajudicial* ("Extrajudicial Reorganization" or "EJ") in the Federative Republic of Brazil pursuant to Federal Law No. 11,101 of February 9, 2005, as amended from time to time, (the "Brazilian Bankruptcy Law"), filed before the First São Paulo Bankruptcy and Reorganization Court of the Fórum Central Cível of the Appellate Court of the State of São Paulo (the "Brazilian Court," and such proceeding, the "Foreign Proceeding").

2. I submit this declaration (the "Brazilian Law Declaration") in support of the *Verified Petition for an Order Granting Recognition and Final Relief in Aid of a Foreign Proceeding pursuant to 11 U.S.C. §§ 105(a), 1515, 1517, 1520(a) and 1521* (the "Verified Petition") filed concurrently herewith which seeks entry of an order pursuant to sections 105(a), 1509(b), 1515, 1517, 1520(a) and 1521 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), *inter alia*, (i) granting the petitions in these cases and recognizing the Foreign Proceeding as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding) pursuant to section 1517 of the Bankruptcy Code, (ii) recognizing the petitioner, Adriana Henry Meirelles, as the "foreign representative," as defined in section 101(24) of the Bankruptcy Code, in respect of the Foreign Proceeding, entrusting her with the administration of the Debtors' assets within the territorial jurisdiction of the United States, (iii) recognizing and enforcing the Brazilian Reorganization Plan in the United States and giving full force and effect in the United States to the Brazilian Reorganization Plan (as defined in the Motion) to be consummated in connection with the Foreign Proceeding and the Brazilian Confirmation Order (as defined below) entered by the Brazilian Court on October 26, 2020, confirming the Brazilian Reorganization Plan, (iv) authorizing and directing the U.S. Intermediaries (as defined in the Motion) to take any and all actions necessary to give effect to the terms of the Brazilian

2

Reorganization Plan, including, without limitation, the cancellation of the guarantees under the Existing Securities (as defined in the Motion) and the issuance and distribution of the New Securities (as defined in the Motion), and any ministerial actions related thereto, (v) permanently enjoining all parties from commencing, continuing or taking any action in the United States to interfere with the Foreign Proceedings or the Brazilian Reorganization Plan, including, without limitation, to obtain possession of, exercise control over, or assert claims against the Debtors or their property and (vi) granting such other and further relief as this Court deems just and proper.

3. I have been practicing law for over 15 years as a lawyer. I graduated from Brazil's University of São Paulo Law School ("USP") in 2004 and, since then, I have focused my practice on corporate and bankruptcy matters, with a particular emphasis on corporate transactions, large-scale bankruptcies and restructurings, and complex mergers and acquisitions. I obtained my LL.M. degree in Corporate Governance from Stanford Law School in 2008. I have extensive experience with bankruptcy and corporate restructuring cases in Brazil.

4. This declaration is comprised of matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements reflect Brazilian law based on my education and years of experience practicing Brazilian law in Brazil. Where the matters stated in this declaration are statements of fact they are either: (i) based on my personal knowledge, and are known to me to be true and accurate, or (ii) if not within my personal knowledge, are derived from documents and/or information supplied to me by or on behalf of Adriana Henry Meirelles, the foreign representative of the Debtors, or her staff, and are true to the best of my knowledge, information and belief.

**Brazilian Extrajudicial Reorganization**

5. Insolvency proceedings in Brazil are governed by the Brazilian Bankruptcy Law, which aims to encourage, where viable, a company's successful court supervised reorganization, rather than its liquidation. In service of this aim, it seeks to foster collaboration between a debtor's creditors and judicial authorities. The Brazilian Bankruptcy Law provides for bankruptcy liquidation proceeding known as *falência* as well as two forms of reorganization: (i) judicial reorganization proceeding known as *recuperação judicial* and (ii) the expedited Extrajudicial Reorganization described above. Because the Foreign Proceeding is an Extrajudicial Reorganization, only the procedures and requirements of Extrajudicial Reorganizations will be discussed herein.

A. **Brief Description of the Extrajudicial Reorganization Proceeding**

6. Chapter VI of the Brazilian Bankruptcy Law establishes Extrajudicial Reorganization as one of the proceedings through which companies can reorganize. The Extrajudicial Reorganization proceeding is a court-supervised means of implementing an arrangement negotiated between the debtor and its creditors, akin to a prepackaged chapter 11 case under the Bankruptcy Code. In an Extrajudicial Reorganization proceeding under the Brazilian Bankruptcy Law, just as in a prepackaged chapter 11 case under the Bankruptcy Code, a debtor may negotiate a reorganization and agree to a plan with its creditors and then submit the approved plan to the appropriate Brazilian state civil court (the "EJ Court") for confirmation, as was the case with the Brazilian Reorganization Plan. The plan is submitted at the outset of the case, which is different from a judicial reorganization proceeding under the Brazilian Bankruptcy Law, under which the plan is filed within 60 days after the EJ Court renders a decision accepting the filing of the petition.

### B. Who May File an Extrajudicial Reorganization Proceeding in Brazil

7. Only a debtor may file a petition for Extrajudicial Reorganization. Creditors are not permitted to do so as an Extrajudicial Reorganization may not be filed on an involuntary basis.

### C. Requirements for Commencing an Extrajudicial Reorganization

8. In order to file a petition for Extrajudicial Reorganization in Brazil, the debtor must, among other requirements, be considered a business company and the following requirements must be met: (i) the debtor must have been doing business regularly for over two years; (ii) the debtor shall not already be subject to a liquidation proceeding, and if it has been subject to a liquidation proceeding in the past, the resulting liabilities shall have been discharged by a final court decision; (iii) the debtor shall not have any pending judicial reorganization case, nor have been granted a judicial reorganization within the last five (5) years or confirmation of another extrajudicial reorganization plan within the last two (2) years; and (iv) neither the debtor nor any of its senior management shall have been convicted of any bankruptcy crime.

9. The plan presented with the petition also has to comply with the following requirements: (i) the plan cannot provide for early repayment of claims or unfavorable treatment of creditors not subject to the plan; (ii) all similarly situated creditors have to be treated equally (subject to narrow exceptions); (iii) only prepetition claims may be subject to the plan; (iv) the disposition of any asset given as collateral or release or replacement of such collateral may only occur with the express consent of the relevant secured creditor; and (v) the plan shall not suppress the exchange rate variation in the calculation of claims in foreign currency without the express consent of the relevant creditor.

10. With the petition, the debtor must include the plan, a description of the causes of its financial distress, its financial statements for the previous year of operations and the period of the last day covered by the previous year's financial statement through approximately the date of filing, a list of its creditors and claims and any other pertinent information and documents as required by law.

### D. The Debtor's Operations During the Extrajudicial Reorganization

11. During the proceeding, the debtor retains the right to administer its assets and affairs and to operate its business. The officers and directors of the debtor continue to be duly authorized to act on the debtor's behalf. In general, no judicial administrator is appointed.

12. Brazilian case law has developed to allow the Debtor under an Extrajudicial Reorganization proceeding to request, and the EJ Court to grant, a 180-day stay of all actions or enforcement proceedings that have been commenced (and prevent the filing of any new action or enforcement proceedings) against the debtor related to the claims that are subject to the plan ("Stay Period"). Brazilian case law has also developed the understanding that the 180-day stay should be counted in calendar days.

13. Some claims are by nature not subject to the Extrajudicial Reorganization, meaning that they cannot be restructured in an EJ proceeding. The following claims (the "EJ Exempt Claims") are not subject to the EJ: (i) labor claims; (ii) taxes; (iii) credits secured by "fiduciary collateral" (i.e., a fiduciary assignment of contract rights (*cessão fiduciária*) or fiduciary assignment of assets (*alienação fiduciária*));[2] (iv) credits deriving from leasing transactions; (v)

---

[2] Fiduciary collateral is a particular type of collateral defined statutorily by Brazilian law and explicitly exempted from restructuring under the Brazilian Bankruptcy Law. Through fiduciary collateral, the debtor and owner of an asset temporarily transfers the property rights in such asset to the creditor as guarantee of an obligation. If the debtor defaults, the creditor, as the owner of the asset, may initiate a proceeding to publicly auction the asset and satisfy its obligation, with the remainder of the proceeds thereof directed toward the debtor. This allows parties to negotiate for stronger collateral packages when desirable.

owner or committed seller of real estate; (vi) sellers whose contracts contain "reservation of title" provisions; (vii) amounts delivered to a debtor, in domestic currency, resulting from advances of monies due in export exchange agreements (in forms termed "Advances on Foreign Exchange Contracts" or "Advances on Export Credit Instruments", and abbreviated "ACC" or "ACE", respectively).

14. As noted, EJ Exempt Claims may not be restructured in the extrajudicial reorganization plan, and rights in collateral supporting EJ Exempt Claims are preserved. Further, absent special order of the EJ Court, creditors holding EJ Exempt Claims may generally enforce their claims even during Extrajudicial Reorganization and despite the Stay Period.

E. **Plan Confirmation Process and Notification Requirements in an Extrajudicial Reorganization Proceeding**

15. Pursuant to Article 163 of the Brazilian Bankruptcy Law, any claims against a debtor other than the EJ Exempted Claims that exist at the time that the extrajudicial restructuring plan is approved by the EJ Court, whether matured or unmatured, may be adjusted thereunder. An extrajudicial reorganization plan may address multiple classes of claims against a debtor or be limited to groups of claims of the same nature and subject to similar payment terms and conditions. Each member of a group of claims affected by such a plan, generally, must receive similar treatment under the plan. An extrajudicial reorganization plan must be approved and signed by creditors holding over three-fifths (60%) in principal amount of each group of claims subject to the plan at the time the plan is filed with the EJ Court.

16. Pursuant to Article 164 of the Brazilian Bankruptcy Law, upon the receipt of a petition for confirmation of an extrajudicial reorganization plan, the EJ Court must order (i) the publication of a notice in the official court gazette (the "Court Official Gazette") and in a newspaper with national circulation; and (ii) that the debtor sends a letter to all creditors subject

to the plan, domiciled or headquartered in the country, informing them about the EJ request. The notice and the letters are intended to give notice to all affected creditors of their right to challenge the proposed plan on certain grounds within a statutory 30-day objection period following such publication, which, in the Foreign Proceeding, was counted in calendar days.

17. After the expiration of the 30-day objection deadline, if there are any timely-filed objections to the proposed plan, the debtor has five (5) days to answer the objections. Upon the expiration of this response period, or of the 30-day objection deadline in case no objections are raised by creditors, the case record is sent to the EJ Court to render a decision regarding the confirmation of the proposed plan.

18. In general, the EJ Court is expected to approve a proposed extrajudicial plan if it has been approved by the requisite majority of three-fifths (60%) of each group of affected creditors and if other specific requirements have been met (as further explained below). The EJ Court will then determine whether the quorum was reached, notice of the plan was properly published, whether all other related administrative requirements were properly completed and whether the EJ Court finds that the plan is not the result of (and will not result in) any fraudulent or otherwise harmful acts. The EJ Court's decision on confirmation is subject to possible appeal, but any appeals that are filed do not automatically stay the proceeding or the consummation of an approved extrajudicial plan.

19. Creditors are given notice of every EJ Court decision and the 15-business-day deadline for filing appeals runs from the date on which creditors are notified or the date of publication of each decision in the Court Official Gazette. The entire proceeding is supervised by the EJ Court, which assesses whether all parties in interest were given proper notice and proper

means of defending their rights, pursuant to the due process requirements of the Brazilian Federal Constitution.

### F. The Effects of the Confirmation of the Plan

20. As mentioned above, at least three-fifths (60%) of the claims held by holders of each group of creditors subject to the plan must sign the plan in order for the EJ Court to confirm the plan. When assessing if the three-fifths (60%) adhesion requirement is met, the EJ Court will exclude the adhesion of insiders, which are creditors that are directly shareholders, or indirectly holders of list 10% of equity, or that are controlling or controlled by or under direct or indirect common control with the debtor or any of its affiliates, or its officers or their families and other related party to the debtor, pursuant to article 43 of the Brazilian Bankruptcy Law.

21. The EJ Court will confirm the plan (i) if the adhesion requirement and all other legal requirements are met; and (ii) the plan does not contemplate any of the acts set forth in article 130 of the Brazilian Bankruptcy Law (with respect to fraudulent conveyance or acts to defraud creditors) or have any other defects.

22. If the adhesion requirement and all other legal requirements are met, the EJ Court will confirm the plan, and such plan will bind all holders of claims contemplated by the plan.

23. If the reorganization plan is confirmed, the debtor continues its normal activities without any supervision by the EJ Court. The plan, upon the confirmation order from the EJ Court, is considered a judicial executive title (article 161 of the Brazilian Bankruptcy Law) and if the debtor fails to perform any obligation set forth in the plan, an aggrieved party may seek specific performance pursuant to articles 513 et. seq. of the Brazilian civil procedure code (Law 13,105 from March 16, 2015).

**Brazilian Bankruptcy Law Relevant to the Factors for Granting Additional Relief Set Forth in Section 1507 of the Bankruptcy Code**

A. **Brazilian Bankruptcy Law Provides Just Treatment of All Holders of Claims Against or Interests in the Debtor's Property**

24. As outlined above, the procedural safeguards for creditors of a debtor under Brazilian Bankruptcy Law are robust. The Brazilian Bankruptcy Law provides a comprehensive procedure for the orderly resolution of claims and the equitable distribution of assets among the estate's creditors in a unified proceeding. Moreover, with respect to the Extrajudicial Reorganization proceeding, the 60% claim majority requirement addressed above requires significant consensus and active participation of the creditors of each group of claims affected by the extrajudicial reorganization plan in the negotiations that precede the filing of the petition in order for the debtor to be able to present the accepted plan at the outset of the case.

25. In addition, creditors may object to a debtor's proposed reorganization plan within 30 days of the publication of notice in the Court Official Gazette and in a major commercial newspaper with nationwide distribution in Brazil. The Brazilian Bankruptcy Law provides that such creditors may only assert: (i) non-compliance with the 60% majority requirement of each group of claims subject to the plan; (ii) the occurrence of any event that would result in a liquidation proceeding, pursuant to Article 94, III of the Brazilian Bankruptcy Law;[3] (iii) the occurrence of any fraudulent conveyances or other acts to defraud creditors, pursuant to Article

---

[3] Article 94, III, of the Brazilian Bankruptcy Law sets forth the following acts which would bar the confirmation of a plan: (i) the debtor makes a hasty sale of its assets or engages in value-destructive or fraudulent acts to make payments to some creditors; (ii) the debtor enters into, or tries to enter into, simulated transactions or sale of assets to third parties, in order to delay payments due or to defraud creditors; (iii) the debtor transfers its main business facilities to third parties without the consent of all creditors and not retaining sufficient assets to satisfy the existing claims; (iv) the debtor enters into a simulated transaction to transfer its main business facilities in order to circumvent the enforcement of the law or to defraud creditors; (v) the debtor grants new or additional collateral to existing creditors, not retaining enough free assets to pay for its current debts; (vi) the debtor cannot be found and leaves no agent with enough assets to pay its currents debts; and (vii) the debtor does not comply with any provision set forth in a confirmed judicial reorganization plan.

10

130 of the Brazilian Bankruptcy Law; or (iv) any violation of any other provision established by the Brazilian Bankruptcy Law or any other applicable law.

26.     Creditors may also seek reconsideration of approval of a reorganization plan. Within five (5) business days after notice that the EJ Court has confirmed a plan, creditors may present to the EJ Court a motion for clarification and within 15 business days after notice of plan confirmation, creditors may file an interlocutory appeal to be considered by the relevant State Court of Appeals (the "Court of Appeals").  An interlocutory appeal may be filed by creditors either after the plan is confirmed or after the motion for clarification has been decided upon.

27.     Finally, after the Court of Appeals issues its decision, the creditors have 15 days to file a special appeal to the Brazilian Superior Court of Justice (for violation of federal law) and an extraordinary appeal to the Brazilian Supreme Court (for violation of the Constitution, only if applicable).  Creditors receive proper notice of court decisions by an electronic notice issued by the State Court's website, or by means of a publication in the Court Official Gazette, which is publicly available and may be consulted by any interested party.  The deadlines for filing appeals run from the date of the publication of the court decisions in the Court Official Gazette.

**B.  United States Claimholders Will Not Be Prejudiced or Inconvenienced in Processing Claims**

28.     Brazilian Bankruptcy Law provides creditors with adequate notice of timing and procedures for filing claims and such procedures do not create any additional hurdles for foreign creditors to file a claim.  First, as mentioned above, upon approving the petition, the EJ Court will render the initial EJ Court order ordering that notice of the proceedings be published in the Court Official Gazette and in a major commercial newspaper.  Therefore, all of the debtor's creditors are given notice of the proceeding and of the prepackaged plan presented therewith.

29. Further, the Brazilian Bankruptcy Law does not differentiate between foreign and local creditors, meaning that foreign and local creditors are subject to proceedings under the Brazilian Bankruptcy Law on the same terms described herein and have the same rights and protections, including the right to notice and hearing. Foreign creditors are entitled to be listed on the same list of creditors and are bound to the same procedures and deadlines. Foreign creditors are entitled to an additional protection: the reorganization plan cannot convert claims expressed in a foreign currency to Brazilian *reais* without the specific consent of each affected creditor, which is an important protection for foreign creditors, as they do not become subject to currency exchange risk while the case is pending. As such, no significant burdens are placed upon United States creditors or any other foreign creditors that are inconsistent with those placed upon domestic creditors.

### C. Prevention of Preferential or Fraudulent Dispositions of the Debtor's Property

30. Any creditor, the Brazilian Public Prosecutor's Office or the judicial administrator appointed by the EJ Court within the judicial reorganization or liquidation proceedings, may bring actions to avoid transfers made to third parties by the debtor with the intent to harm creditors or damage the debtor's estate if such debtor is declared bankrupt and goes into liquidation. In this case, the plaintiff will have to show that the following elements of fraud under Brazilian law are satisfied: (i) a claim already existed when the transfer was made; (ii) the transfer left the debtor without sufficient assets to cover such claim; and (iii) the debtor and the third party transferee acted in bad faith. A transfer is presumed to have been made in bad faith where the debtor made gratuitous transfers, forgave debts, paid unsecured creditors before maturity date to the detriment of higher-ranked creditors, granted collateral to creditors when the debtor was already insolvent or where the transferee already knew that the debtor was insolvent when the transfer was made. The

EJ Court may also declare such transfers void *sua sponte* if the intent to defraud is not a disputed question of fact.

31. In a bankruptcy liquidation proceeding, some transfers are subject to avoidance as a matter of law if they were made during the legal term (as determined by the court in the decision that declares the debtor bankrupt), 90 days prior to the filing of the bankruptcy petition, the judicial reorganization petition or the date of the first protest by a creditor on account of the debtor's default and ending on the petition date, whichever comes first. Such transfers include payments of debts not yet due, payments of debts that were due but were enforceable in any way not provided for in the agreement memorializing the debt, the creation of liens or any other in rem property interest in connection with a previously incurred debt. Such transfers are considered void regardless of fraudulent intent or prior knowledge of the transferee with respect to the insolvent status of the debtor.

32. In addition, any unsecured creditor may bring a fraudulent conveyance action to avoid a transfer made by a debtor under reorganization to third parties. In such action, the creditor will have to show similar elements to those mentioned above, with respect to transfers that result in the insolvency of the debtor or where the transferee already knew that the debtor was insolvent when the transfer was made. The EJ Court may also declare such transfers void *sua sponte* if the intent to defraud is not a disputed question of fact.

**D. Distribution of Proceeds of the Debtor's Property Is Substantially in Accordance with the Bankruptcy Code**

33. I understand that, in substance, the distribution scheme prescribed in the Brazilian Bankruptcy Law, within a bankruptcy liquidation proceeding, is substantially in accordance to that under the Bankruptcy Code, as priority is granted to certain administrative claims and, importantly, secured claims rank over unsecured claims.

34. As mentioned above, the property interest in assets given as collateral in the form of *alienação fiduciária* is transferred to the creditor and only returns to the debtor upon repayment of the debt. Because of this, such assets are not legally considered assets of the estate; the debtor only holds a future interest if the repayment of the debt occurs. Thus, creditors secured by *alienação fiduciária* are entitled to seize their collateral if the debtor enters into liquidation. Such creditors are not subject the waterfall provisions set forth by Brazilian Bankruptcy Law, as described below.

35. First, under the Brazilian Bankruptcy Law, administrative claims are given super-priority over the claims of the other remaining creditors. Such administrative claims include: (i) fees of the judicial administrator and his or her assistants; (ii) labor-related claims or claims related to occupational accidents arising after the petition; (iii) any sums provided to the estate by the creditors; (iv) expenses related to the disbursement of proceeds of the estate and the costs of the bankruptcy proceedings; (v) court costs for actions brought against the estate in which the estate is defeated; (vi) other obligations arising from valid juristic acts performed during the judicial reorganization and taxes arising after the petition; and (vii) labor-related claims of a strict salary nature, as opposed to hourly wages, arising during the three months prior to the petition date limited to an amount equal to five monthly minimum wages per salaried employee.

36. Following the payment of the above-referenced administrative claims, the various classes of claims are paid, within a bankruptcy liquidation proceeding, in the following order. First, each holder of a labor-related claim is entitled to a priority claim capped at an amount equal to 150 months of the Brazilian national monthly wage (any portion of a labor-related claim exceeding that amount is a deficiency claim and is classified within the unsecured creditors'

class).[4] Second, secured claims up to the value of the assets securing such claims. Third, tax claims exclusive of tax fines. Fourth, certain claims entitled to "special" privileges under applicable non-bankruptcy law. Fifth, certain claims entitled to "general" privileges under applicable non-bankruptcy law. Sixth, unsecured claims. Seventh, penalties and fines in connection with criminal or administrative law breaches, including tax fines. Eighth, claims subordinated by law or contract and those claims held by directors and shareholders not employed by the debtor.

37. In an Extrajudicial Reorganization, the claims of the creditors subject to the plan (and only such claims) are paid according to the provisions of the reorganization plan.

[*Remainder of Page Intentionally Left Blank*]

---

[4] The minimum monthly wage is the minimum salary paid to a worker in Brazil. Its amount is determined by the Brazilian government from time to time.

Executed at São Paulo, Brazil
November 24, 2020

/s/ Felipe Ribeiro da Luz Camara
Felipe Ribeiro da Luz Camara