**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Odebrecht Engenharia e Construção S.A., *et al.*,[1]<br><br>Debtors in a Foreign Proceeding | Chapter 15<br><br>Case No. 20-12741 (MEW)<br><br>(Jointly Administered) |

**ORDER GRANTING RECOGNITION**
**AND FINAL RELIEF IN AID OF A FOREIGN PROCEEDING**

Upon the motion (the "Motion")[2] of Adriana Henry Meirelles as foreign representative (the "Petitioner"), in the above-captioned chapter 15 cases (the "Chapter 15 Cases") in respect of the Debtors in a foreign proceeding in an extrajudicial reorganization in the Federative Republic of Brazil pursuant to Federal Law No. 11,101 of February 9, 2005 (the "Brazilian Bankruptcy Law"), approved by the First Court of Bankruptcy and Judicial Recovery of the State of São Paulo on October 26, 2020 (the "Brazilian Court," and such proceeding, the "Brazilian EJ Proceeding"), for entry of a final order (this "Order"), pursuant to sections 105(a), 1507, 1509(b), 1515, 1517, 1520(a) and 1521 of title 11 of the United States Code, 11 U.S.C. sections 101, et seq. (the "Bankruptcy Code") (i) granting the Petitions for Recognition in the Chapter 15 Cases and recognizing the Brazilian EJ Proceeding as a foreign main proceeding (or, in the alternative, a foreign nonmain proceeding) pursuant to section 1517 of the Bankruptcy Code; (ii) recognizing that the Petitioner is the duly appointed foreign representative of the Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Debtors in the

---

[1]  The Debtors in these chapter 15 cases (the "Chapter 15 Cases") and the last four identifying digits of the tax number in the jurisdiction are: Odebrecht Engenharia e Construção S.A. (Brazil – 01-28); CNO S.A. (Brazil – 01-82); OECI S.A. (Brazil – 01-78).

[2]  Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

Chapter 15 Cases; (iii) recognizing and enforcing the Brazilian Reorganization Plans in the United States and giving full force and effect to and granting comity in the United States to the Brazilian Confirmation Order; and (iv) granting certain injunctive relief and additional relief; and Court having determined that the relief set forth herein being in the best interests of the Debtors and their estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

B.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) and this Court has the statutory and constitutional authority to issue a final ruling with respect to this matter. Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

C.      The Petitioner is the duly appointed "foreign representative" of each of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

D.      The Chapter 15 Cases were properly commenced pursuant to sections 1504, 1509 and 1515 of the Bankruptcy Code and the Petitioner has complied with section 1515.

E.      Due and proper notice of the Motion and Hearing have been provided in accordance with the Order Pursuant to Federal Rules of Bankruptcy Procedures 2002 and 9007 Scheduling

Hearing and Specifying Form and Manner of Service and Notice, ECF No. 10 (the "Scheduling Order") and in compliance with the requirements of Bankruptcy Rule 2002(q), and no other or further notice need be provided.

F. The Brazilian EJ Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

G. The Brazilian EJ Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

H. Brazil is the center of main interests of the Debtors, and, accordingly, the Brazilian EJ Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

I. The Petitioner and the Debtors, as applicable, are entitled to the relief available pursuant to section 1520 of the Bankruptcy Code and to additional assistance and discretionary relief pursuant to sections 1507 and 1521(a) of the Bankruptcy Code, to the extent set forth in this Order and subject to the limitations set forth in this Order.

J. The injunctive relief set forth in this Order is appropriate and necessary to prevent the risk that the consummation and implementation of the Brazilian Reorganization Plan may be thwarted by the actions of particular creditors, a result inimical to the purposes of Chapter 15 of the Bankruptcy Code as set forth in section 1501(a) of the Bankruptcy Code. Such actions could put in peril the Debtors' ability to successfully restructure.

K. Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is necessary and appropriate to the success of the Brazilian EJ Proceeding and Brazilian Reorganization Plan, (iii) confers material benefits on, and is in the best interests of the Debtors,

and their creditors, including, without limitation, the beneficial owners of the Existing Notes and the New Securities and their nominees on their behalf (collectively, the "Beneficial Owners") and the Trustee, and (iv) is important to the overall objectives of the Debtors' restructuring.

L.  The cancellation of the guarantees provided by the Debtors under the Existing Notes (the "Guarantee Obligations") and the issuance of the New Securities as contemplated by the Brazilian Reorganization Plan and the procedures set forth therein and approved by the Brazilian Court with respect to the issuance of the New Securities (the "Distribution Procedures") (subject to the terms and conditions hereof) are essential elements of the Brazilian Reorganization Plan and are in the best interest of the Debtors and their creditors, including the Beneficial Owners. The Distribution Procedures are a fair and reasonable means of effectuating the terms of the Brazilian Reorganization Plan.

M.  The relief granted herein will not cause undue hardship or inconvenience to any party in interest and to the extent that any hardship or inconvenience may result to such parties, it is outweighed by the benefits of the requested relief to the Debtors, their estates and their creditors.

N.  The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to sections 105, 362, 1504, 1507, 1509, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  The Petitions for Recognition and other relief requested in the Motion are hereby granted to the extent set forth herein.

2.  The Brazilian EJ Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

3. The Petitioner is the duly appointed foreign representative of the Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Debtors in the Chapter 15 Cases.

4. Subject to the terms of this Order, the Brazilian Confirmation Order and the Brazilian Reorganization Plan are hereby recognized, granted comity, and given full force and effect to the same extent that they are given effect in the Federative Republic of Brazil, and each is binding on all creditors of the Debtors, including Beneficial Owners, and any of their successors or assigns.

5. The relief afforded to a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code is hereby granted to the Brazilian EJ Proceeding; *provided, however,* that section 362 of the Bankruptcy Code shall only be applicable to the extent necessary to stay actions that are contrary to the Brazilian Reorganization Plan or that seek to collect or enforce on claims related to the Existing Notes, and shall not otherwise be applicable; and *provided further*, that the automatic stay shall not bar any actions permitted under the terms of paragraph 11 of this Order.

6. The Distribution Procedures, summarized in Appendix A hereto, are approved in their entirety as the means for effectuating the Brazilian Reorganization Plan.

7. Each of (i) The Bank of New York Mellon ("BNYM"), (A) in its capacity as the indenture trustee (the "Trustee") under the indentures relating to the Existing Notes and (B) in its capacity as the indenture trustee under the indenture relating to the issuance of the New Notes, and (ii) the exchange agents, administrative agents, paying agents, transfer agents, registrars and settlement agents used in the Distribution Procedures (each of the parties in the foregoing clauses (i) through (ii), the "Directed Parties"), (iii) The Depository Trust Company ("DTC") in its capacity as record holder of the Existing Notes, as authorized and empowered to act pursuant to

5

the terms and conditions of the Distribution Procedures, (iv) the DTC participants, (v) each holder and beneficial owner of the Existing Notes (and the nominees and representatives thereof), in each case solely in such capacity, (vi) the Debtors, (vii) the Creditor Representative (as defined in the Brazilian Reorganization Plan), the Ad Hoc Group and their respective attorneys, financial advisors and other representatives and (viii) any other party authorized by the Debtors to implement the Distribution Procedures (each of the parties in foregoing clauses (iii) through (ix), the "Authorized Parties") are hereby authorized, empowered and directed, as applicable, to take any and all lawful actions necessary to give effect to and implement the Brazilian Reorganization Plan (including the steps outlined in the Distribution Procedures), subject to the terms and conditions thereof and of the documents under which they have or will be appointed to act.

8. With respect to the Trustee, subject to its receipt of payment in full of any outstanding Trustee Fees and Expenses (as such term is defined below), such Trustee is authorized and directed to comply with the Distribution Procedures in order to deliver the New Securities.

9. Except as provided in paragraph 11 of this Order, all persons and entities are permanently enjoined and restrained from (i) commencing or taking any action or asserting any claim, within the territorial jurisdiction of the United States, that is inconsistent with, in contravention with, or would interfere with or impede the administration, implementation and/or consummation of the Brazilian Reorganization Plan, the Brazilian Confirmation Order or the terms of this Order, including the Distribution Procedures, and (ii) taking any action against the Debtors or their property located in the territorial jurisdiction of the United States to recover or offset any debt or claims that are extinguished, novated, cancelled, discharged or released under the Brazilian Reorganization Plan and the Brazilian Confirmation Order. No action may be taken within the

territorial jurisdiction of the United States to confirm or enforce any award or judgement that would otherwise be in violation of this Order without first obtaining leave of this Court.

10. The Releases set forth in the Brazilian Reorganization Plan and confirmed by the Brazilian Confirmation Order shall be granted comity and shall be enforced in the United States. Accordingly, subject to paragraph 11 of this Order, all Releasing Parties (as defined in the Brazilian Reorganization Plan) are enjoined from taking action in the territorial jurisdiction of the United States to enforce a Released Claim against a Released Party (as defined in the Brazilian Reorganization Plan). The definitions of "Releasing Parties" and "Released Parties", and the terms of the Releases set forth in the Brazilian Reorganization Plan, are attached hereto as Appendix B hereto.

11. Notwithstanding any other provision of this Order, nothing herein or in the application of section 362 of the Bankruptcy Code shall enjoin any of the following matters:

(a) any action by any person or entity in the Brazilian EJ Proceeding consistent with Brazilian law, including appeals in Brazil related thereto;

(b) the pursuit by any person or entity of any rights or remedies granted to that entity pursuant to the Brazilian Reorganization Plan or the enforcement of any terms of the Brazilian Reorganization Plan and the Brazilian Confirmation Order;

(c) any action or transaction that is permitted under the terms of the Brazilian Reorganization Plan and the Brazilian Confirmation Order;

(d) the implementation and enforcement of any agreement contemplated by and entered into in connection with the Brazilian Reorganization Plan;

(e) the continuation of that certain litigation pending in the United States District Court for the Southern District of New York involving Debtors OEC and CNO

captioned DoubleLine Capital LLP et al. v. Odebrecht Finance Ltd. et al., Case No. 17-04576 (the "DoubleLine Litigation") and that certain litigation pending in the United States District Court for the Southern District of New York involving Debtors Odebrecht S.A. and Odebrecht Finance Ltd. and the Washington State Investment Board ("WSIB"), captioned Washington State Investment Board v. Odebrecht S.A., et al., Case No. 17-cv08118 (the "WSIB Litigation" and together with the DoubleLine Litigation, the "Excluded Litigations"); *provided that* this Court's Revised Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief, In re Odebrecht S.A., Case No. 19-12731 (Bankr. S.D.N.Y.), ECF No. 27, in the chapter 15 cases of Odebrecht S.A., Odebrecht Participações e Investimentos S.A., and ODB International Corporation (the "Remaining Chapter 15 Debtors"), shall continue to be applicable with respect to the Remaining Chapter 15 Debtors as set forth therein and shall not be modified by this Order such that in each case the stay with respect to the Remaining Chapter 15 Debtors shall not apply to, and, to the extent necessary, shall be lifted for the sole purpose of liquidating and reducing claims against them to, in the case of the Excluded Litigations, a final judgment including applicable appeals;

(f) the exercise and enforcement of a police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bankruptcy Code;

(g) the exercise of any rights to the extent not stayed pursuant to section 362(o) of the Bankruptcy Code; or

(h) the rights of a Trustee (i) to assert, to collect and be paid Trustee Fees and Expenses by or from the Debtors, and (ii) to assert any of the rights, remedies,

protections, indemnities, privileges and protections in favor of Trustee under the Existing Notes and the related documentation.

12. The claims and causes of action asserted in the WSIB Litigation, and any settlement or judgment arising therefrom, do not constitute "Claims" as defined in, and are not cancelled, discharged, or restructured under or otherwise impacted in any way by, the Brazilian Reorganization Plan.

13. The Debtors and their respective successors, agents, representatives, advisors and counsel are entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

14. Each of the Debtors and the Trustee, subject to the Trustee's receipt of payment in full of any outstanding Trustee Fees and Expenses and the prior or substantially contemporaneous issuance and distribution of the New Securities, is authorized and directed to provide DTC with the customary documentation accepted by it, as applicable, in order to cancel the Guarantee Obligations, as contemplated by (and subject to the terms and conditions of) the Brazilian Reorganization Plan and the Distribution Procedures; *provided* that the Trustee is not obligated to grant indemnity in connection therewith. The Guarantee Obligations shall be deemed cancelled on the dates and at the times set forth in the Distribution Procedures, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged and deemed satisfied in full (*provided*, that all of the rights, remedies, protections, indemnities, privileges and protections in favor of Trustee against the Debtors under the Existing Notes and the related documentation shall survive such cancellation), and the Trustee, subject to its receipt of payment in full of any outstanding Trustee Fees and Expenses, is authorized and directed to take any and all actions requested of it to give effect to such cancellation of the Guarantee Obligations. For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Distribution Procedures

(including any modifications thereof) shall (i) be consistent with the terms of the Brazilian Reorganization Plan and (ii) provide that the cancellation of any Guarantee Obligations shall not occur unless (without limitation) the New Securities have been issued and distributed in accordance with the terms of the Brazilian Reorganization Plan or are being distributed contemporaneously with such cancellation.

15. Upon distribution of the portion of the New Securities allocated to the relevant Existing Notes to DTC for onward distribution to the relevant Beneficial Owners pursuant to the Distribution Procedures, the Trustee shall be automatically relieved of any further obligations relating to the Guarantee Obligations under the relevant indenture and related agreements and all of the Trustee's duties under or related to the Guarantee Obligations under the indenture and related instruments, certificates, notes and other documents shall be deemed discharged and satisfied.

16. Nothing in this Order shall affect the rights of the Trustee to assert, to collect or to be paid their fees and expenses, including, without limitation, any amount related to the Debtors' indemnity obligations in favor of the Trustee, from the Debtors or from the distributions to Beneficial Owners, in each case, in accordance with the terms of the relevant indenture governing the relevant Existing Notes and/or the New Securities or as otherwise agreed to in writing by the relevant Trustee (the "Trustee Fees and Expenses").

17. Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry; (ii) the Petitioner is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Petitioner is authorized and empowered, and may in her discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

18. A copy of this Order, confirmed to be true and correct, shall be served, within seven business days of entry of this Order, in accordance with this Court's Scheduling Order, with such service being good and sufficient service and adequate notice for all purposes.

19. This Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

20. Except as set forth in paragraph 11 of this Order, and notwithstanding anything to the contrary in any other provision hereof, the effectiveness of all injunctive relief in support of the Brazilian Reorganization Plan and the Brazilian Confirmation Order contained in this Order shall be limited to and in support of the Brazilian Reorganization Plan and the Brazilian Confirmation Order as they are given effect by a court of competent jurisdiction in the Federative Republic of Brazil from time to time, and if any Brazilian Reorganization Plan or the Brazilian Confirmation Order is modified by a court of competent jurisdiction then such provisions of this Order shall continue to apply to the Brazilian Reorganization Plan and the Brazilian Confirmation Order as so modified, but shall not apply to any provision of any Brazilian Reorganization Plan or the Brazilian Confirmation Order that has ceased to be given effect in the Federative Republic of Brazil.  For the avoidance of doubt, and notwithstanding the foregoing sentence, while any such modification is effective, this Order shall remain effective in all other respects, including with respect to recognition of the Petitioner as the "foreign representative" and with respect to recognition of the Brazilian EJ Proceeding, and if any previously suspended or rescinded provision of a Brazilian Reorganization Plan or the Brazilian Confirmation Order is reinstated in Brazil, the related provisions of this Order shall be automatically reinstated to the same extent.

21. In no event shall this Order prevent the implementation of any amendments or modification to the Brazilian Reorganization Plan that may be agreed upon by and among the

Debtors and the applicable creditors pursuant to applicable law and approved by the Brazilian Court.

22.     Notwithstanding anything to the contrary herein, nothing in this Order shall in any way limit, impair, or affect the rights of holders, beneficial owners, nominees of beneficial owners or agents under or relating to the New Securities, once issued.  To the extent that any now existing or future (x) provision of the Brazilian Reorganization Plan or any schedule, exhibit or appendix thereto or (y) order of the Brazilian Court or any higher Court in Brazil having jurisdiction over the EJ Proceeding or the relief granted therein (including, without limitation, any purported modification or amendment of the terms of the Brazilian Reorganization Plan or any order approving such modification or amendment) purports to modify the terms of the New Securities (or the rights of holders, beneficial owners, nominees of beneficial owners or agents thereunder) from the terms of the form indentures appended to the Brazilian Reorganization Plan (a "Non-Recognized Provision"), nothing in this Order shall be deemed to recognize, enforce or grant any force or effect to such Non-Recognized Provision in the United States.  The New Securities, and any amendments or modifications thereof, shall be subject to the terms, conditions and law governing the applicable New Securities.

Dated:  New York New York
        December 30, 2020

                                        /s/ **Michael E. Wiles**
                                        HONORABLE MICHAEL E. WILES
                                        UNITED STATES BANKRUPTCY JUDGE

**Appendix A**[3]

**Distribution Procedures**[4]

Odebrecht Engenharia e Construção S.A. ("OEC"), CNO S.A. ("CNO") and OECI S.A. ("OECI") are guarantors (the "Guarantors") of the notes issued by Odebrecht Finance Ltd ("OFL" and such notes, the "Existing Notes"). Each of the Guarantors and OFL are involved in separate restructuring proceedings in Brazil and are debtors in chapter 15 cases pending in the United States Bankruptcy Court for the Southern District of New York.

All of the Existing Notes are held through The Depository Trust Company ("DTC"), the U.S. securities depository.

As summarized below, pursuant to the Guarantors' Brazilian Reorganization Plan, the order approving the Guarantors' chapter 15 petition for recognition of the Brazilian EJ proceeding and motion for final relief (the "OEC Order") and the OFL Order, distributions by the Guarantors (the "Distribution") to the holders of the Existing Notes are expected to be made in the following way:

Mandatory Exchange of the Existing Notes for New Securities

The Distribution will be coordinated between the indenture trustee of the Existing Notes, OFL and the Guarantors.

The process will involve a "mandatory exchange" of the Existing Notes for a new series of senior unsecured notes (the "New Notes") and dollar denominated units of a participating debt instrument entitling holders thereof to a specified percentage of future distributions to be made by OEC S.A. (the "Instrument") being issued under the Brazilian Reorganization Plan (jointly, the "New Securities"), whereby the Existing Notes will be exchanged for the New Securities.

Holders of Existing Notes will receive their pro rata portion of the New Securities based on the distribution ratios calculated by the Guarantors in accordance with the Brazilian Reorganization Plan and as described in the Consent Solicitation Statement for approval of the Brazilian Reorganization Plan, and the Existing Notes will be exchanged through DTC for a pro rata share of the New Securities and removed from the DTC system as part of that process.

---

[3] These Distribution Procedures are indicative and subject to revision based on the relevant requirements and procedures of DTC (as such term is defined herein), provided that any revisions that impair the rights, including the right to receive the New Notes and the Instrument, of the holders of Existing Notes under the Brazilian Reorganization Plan shall not be permitted except by further order of the Bankruptcy Court following notice to parties in interest consistent with the Bankruptcy Court's rules and procedures.

[4] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Order.

13

The Distribution will occur following the effectiveness of the Brazilian Reorganization Plan and issuance of the OEC Order and OFL Order.  Those noteholders with the positions just prior to the occurrence of the Distribution will have their Existing Notes removed and receive the pro rata share of New Securities.

**Appendix B**

"Released Parties," under Section 1.1.63 of the Brazilian Reorganization Plan, means each of the following, solely in its capacity as such: (a) the Noteholders; (b) the Debtors and their Affiliates, (c) New OEC, (d) New Notes Issuer, (e) New Holdco, (f) the Creditor Representative, (g) the trustees and any agents appointed under the (i) Existing Notes' indentures, (ii) New Notes Indentures (as defined in the Brazilian Reorganization Plan) or (iii) Holdco Instrument Agreement, and (h) the Proxy Agent; with respect to each of the foregoing parties in clauses (a) through (h), each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), assigns, Subsidiaries (as defined in the Brazilian Reorganization Plan), direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies; and with respect to each of the foregoing parties in clauses (a) through (h), each of such party's current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, trustees, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors or sub-advisors, and other professionals.

"Releasing Parties," under Section 1.1.64 of the Brazilian Reorganization Plan, means each of the following, solely in its capacity as such: (a) the Noteholders, (b) the Debtors and its Affiliates, (c) New OEC, (d) New Notes Issuer, (e) New Holdco, (f) the Creditor Representative, (g) the trustees and any agents appointed under the (i) Existing Notes' indentures, (ii) New Notes Indentures or (iii) Holdco Instrument Agreement, and (h) the Proxy Agent; with respect to each of the foregoing parties in clauses (a) through (h), each of such party's current and former predecessors, successors, affiliates (regardless of whether such interests are held directly or indirectly), assigns, Subsidiaries, direct and indirect equity holders or beneficiaries, funds, portfolio companies, and management companies; and with respect to each of the foregoing parties in clauses (a) through (h), each of such party's current and former directors, officers, members, employees, partners, managers, general partners, limited partners, managing members, independent contractors, trustees, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, advisory board members, investment advisors or sub-advisors, and other professionals.

The releases provided for under Section 12.5 and 12.5.1 of the Brazilian Reorganization Plan provides as follows: As of the Closing Date, each and all of the Releasing Parties (regardless of whether a Releasing Party is also a Released Party) unconditionally and irrevocably discharges and releases (and each Person so discharged and released shall be deemed discharged and released by the Releasing Parties) each and all of the Released Parties and their respective property from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, existing or hereinafter arising, that such Person would have been legally entitled to assert or benefit from (whether individually or collectively), in each case based on or relating to, or in any manner arising from (i) the Claims, including the Existing Notes Guarantees, (ii) any potential claims related to or arising from the issuance, offering or underwriting of the Existing Notes or other claims under applicable securities laws or (iii) the negotiations, formulation, content or implementation of the Extrajudicial Restructuring or any actions or omissions taken in connection with the

Extrajudicial Restructuring prior to the Signing Date until the Closing Date. Notwithstanding anything to the contrary in the Plan, the "Release" referred to in Clause 12.5 shall not release any claims, interests, obligations, rights, suits, damages, causes of action, remedies or liabilities (1) of any Party under this Plan, or in connection with the implementation thereof after the Signing Date to the extent inconsistent with the Plan, or under or in relation to any document, instrument, security or agreement executed or issued in connection with the implementation of any of this Plan, (2) against any Released Party resulting from fraud, willful misconduct or gross negligence of such Released Party, or (3) of the trustees against the Debtors on account of the indemnity obligations under the indentures for the Existing Notes.